IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| GUANGZHOU KOMASPEC MECHANICAL AND ELECTRICAL PRODUCTS MANUFACTURING CO. LTD.,<br><br>Plaintiff,<br><br>v.<br><br>BOOTYSPROUT VENTURES, LLC, BOOTYSPROUT INC.,<br><br>Defendants. | C.A. No. 24-0763-GBW |

## MEMORANDUM ORDER

Pending before this Court is Plaintiff Guangzhou Komaspec Mechanical and Electrical Products Manufacturing Co. Ltd.'s ("Komaspec" or "Plaintiff") Motion for Temporary Restraining Order ("TRO") (D.I. 4). Defendants Bootysprout Ventures, LLC ("Bootysprout Ventures) and Bootysprout, Inc. (collectively "Defendants") oppose this Motion. D.I. 13. For the reasons set forth below, Plaintiff's request for a TRO is **DENIED**.

### I. FACTUAL BACKGROUND

Plaintiff Komaspec is a manufacturer based in China that provides contract manufacturing services for various brands worldwide. D.I. 5 at 1. Since 2017, Plaintiff has manufactured "Bootysprout" products for Defendants and various other Bootysprout entities. *Id.* Plaintiff alleges that, from 2017 to March 2023, Plaintiff supplied Defendant Bootysprout, Inc. with "Bootysprout" products to be sold in the U.S. market. *Id.* at 1-2. According to Plaintiff, while "Bootysprout, Inc. has consistently had cash flow issues to pay [Plaintiff,] Bootysprout, Inc. paid the amount owed during this period, even if delayed. *Id.* Since March 2024, however,

Plaintiff contends that Bootysprout, Inc. has accumulated a debt of $237,971.20. *Id.* at 3. Plaintiff alleges that Bootysprout, Inc. also agreed verbally and in writing to pay the indebtedness owned by Bootysprout Limited, a related entity based in Ireland that sells "Bootysprout" products in the European market, in the amount of $164,222.07. *Id.* In total, Plaintiff alleges that $402,193.27 is owed to Plaintiff by Defendant Bootysprout, Inc. *Id.*

According to Plaintiff, Bootysprout, Inc. not only failed to satisfy its debt, but also took certain actions to hinder, delay, or otherwise defraud Plaintiff from the amounts it is owed. *Id.* Specifically, Plaintiff alleges that Bootysprout, Inc.'s largest shareholder, Michael Ballestero, "recently caused Bootysprout, Inc. to be dissolved in Nevada, incorporated a new entity [Defendant] Bootysprout Ventures in Delaware with substantially the same ownership and control as Bootysprout, Inc., and transferred all Bootysprout, Inc.'s assets to Bootysprout Ventures."[1] *Id.* Plaintiff contends that Bootysprout, Inc. did not receive equivalent value for the transfer of its assets, and the transfer, in turn, rendered Bootysprout, Inc. insolvent and unable to pay its debt. *Id.* According to Plaintiff, it did not learn of Ballestero's conduct until April 2024 and immediately demanded that Bootysprout, Inc. satisfy its debt. *Id.* After Bootysprout, Inc. refused to do so, Plaintiff alleges that it filed suit before this Court on June 27, 2024 asserting, among other things, claims for breach of contract and actual fraudulent transfer. D.I. 1. Shortly thereafter, on June 28, 2024, Plaintiff filed the present Motion seeking to enjoin Bootysprout Ventures from "further dissipat[ing] [the previously acquired] Bootysprout, Inc.'s assets and resources at the expense of [Plaintiff] and the Defendants' other creditors." *Id.* at 12.

---

[1] Plaintiff's reply brief asserted a slightly different allegation, contending "that Bootysprout Inc. transferred all of its most important and valuable intellectual property assets to Bootysprout Ventures leaving Bootysprout, Inc. a significantly diminished entity unable to pay its debts." D.I. 15 at 3.

2

On July 29, 2024, Defendants filed their response in opposition to Plaintiff's Motion and alleged that many of Plaintiff's allegations "are simply untrue." D.I. 13 at 3. Defendant notes, for instance, that Ballestero did not transfer "all Bootysprout, Inc.'s assets to Bootysprout Ventures," as Plaintiff claims. *Id.* at 3-4. Rather, on January 12, 2023, Defendants Bootysprout, Inc. and Bootysprout Ventures executed a Contribution Agreement under which Bootysprout, Inc. transferred only its intellectual property (i.e., patents and trademarks) to Bootysprout Ventures. *Id.*; *see also* D.I. 14, Ex. 1 ("Contribution Agreement"). In exchange, Defendants contend that Bootysprout, Inc. received a 50% membership interest in Bootysprout Ventures. D.I. 13 at 3-4. According to Defendants, Bootysprout, Inc. then assigned its 50% in Bootysprout Ventures to a Delaware limited liability company, Stay Peachy LLC on January 13, 2023, only one day after the transfer. *Id.* at 4; *see also* D.I. 14, Ex. 2 ("Assignment and Assumption Agreement").

Defendants add that, on February 12, 2023, Ballestero sent an email to Plaintiff to inform Plaintiff that Stay Peachy LLC would be the source of payment of any outstanding bills owed by Bootysprout, Inc. D.I. 13 at 4; *see also* D.I. 14, Ex. 3. And shortly thereafter, on March 7, 2023, Defendants contend that Plaintiff executed a Master Supplier Agreement with BootySprout Venture's distributor and licensee, Marketing Group LLC, stating that:

> "[t]his Agreement shall supersede all prior supply arrangements SUPPLIER may have previously had with [Bootysprout, Inc.] (the "BSI Agreement"), who recently assigned all of its rights and interests in and to its intellectual property to [BootySprout Ventures LLC], but in no event is Englewood Marketing Group, LLC or BootySprout Ventures LLC assuming any of the obligations of [BootySprout, Inc.] under the BSI Agreement."

Corrigan Decl. ¶ 8; D.I. 14, Ex. 4. ("Master Supplier Agreement"). This evidence, according to Defendants, is irreconcilable with Plaintiff's claims that it learned of the transfer of assets from Bootysprout, Inc. to Bootysprout Ventures in April 2024 and similarly disproves that Defendants

3

pursued the transfer to obstruct or frustrate Plaintiff's ability to collect on the debt owed by Bootysprout, Inc. D.I. 13 at 11-12.

## II. DISCUSSION

### a. Applicable Standard

As a preliminary matter, the Court must address the parties' dispute over the proper standard governing Plaintiff's Motion for TRO. Plaintiff argues that the Court must apply "the applicable standard under Delaware law," which requires the movant to demonstrate that "(i) it has a colorable claim on the merits; (ii) it will suffer irreparable harm if relief is not granted; and (iii) the balance of hardships favors the moving party." D.I. 15 at 1 (citing *Stirling Inv. Holdings, Inc. v. Glenoit Universal, Ltd.*, 1997 WL 74659, at *2 (Del. Ch. Feb. 12, 1997)).

However, this matter is before the Court on diversity jurisdiction, and the Court must apply "state substantive law and federal procedural law." *Hanna v. Plumer*, 380 U.S. 460, 465 (1965). As the Third Circuit has explained, "when a federal rule actually speaks to a particular point of practice or pleading it governs in a diversity action even if resort to state law would lead to a different result." *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 799 n. 4 (3d Cir. 1989) (internal citations omitted) ("[T]here can be little doubt that [Rule 65(a) and (b)] are procedural in nature."). Thus, even where a "right upon which this cause of action is based is state-created," "Rule 65(a) of the Federal Rules of Civil Procedure contemplates a federal standard as governing requests addressed to federal courts for preliminary injunctions." *System Operations, Inc. v. Scientific Games Dev. Corp.*, 555 F.2d 1131, 1141 (3d Cir. 1977). Accordingly, the preliminary injunction standard governing Plaintiff's Motions is the federal standard.

4

Under the proper federal standard, a temporary restraining order is "an extraordinary and drastic remedy . . . that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972, 117 S.Ct. 1865, 138 L.Ed.2d 162 (1997) (quotation marks and citation omitted). To satisfy its burden of proof, "the moving party must demonstrate the classic four elements: (1) a reasonable probability of success on the merits; (2) that denial of injunctive relief will result in irreparable injury; (3) that granting injunctive relief will not result in even greater harm to the nonmoving party; and (4) that granting injunctive relief will be in the public interest." *Saudi Basic Indus. Corp. v. Exxon Corp.*, 364 F.3d 106, 112 n. 6 (3d Cir. 2004). The first two factors—likelihood of success on the merits and irreparable harm—are "gateway factors" that the moving party must establish to obtain relief. *Reilly v. City of Harrisburg*, 858 F.3d 173, 179 (3d Cir. 2017); *Greater Phila. Chamber of Com.*, 949 F.3d at 133. Unless the movant meets its burden on these two factors, a preliminary injunction is not warranted, regardless of whether the Court proceeds to consider the balance of equities and the public interest. *Reilly*, 858 F.3d at 179.

### b. Irreparable Harm

"[A]n injunction may not be used simply to eliminate a possibility of a remote future injury, or a future invasion of rights." *Continental Group, Inc. v. Amoco Chems. Corp..*, 614 F.2d 351, 359 (3d Cir.1980) (quoting *Holiday Inns of Am., Inc. v. B & B Corp.*, 409 F.2d 614, 618 (3d Cir.1969)). "The relevant inquiry is whether the movant is in danger of suffering irreparable harm at the time the preliminary injunction is to be issued." *SI Handling Sys., Inc. v. Heisley*, 753 F.2d 1244, 1264 (3d Cir.1985). "To show irreparable harm, the party seeking injunctive relief must at least demonstrate 'that there exists some cognizable danger of recurrent violation' of its legal rights." *Anderson v. Davila*, 125 F.3d 148, 164 (3d Cir. 1997) (quoting

5

*United States v. W.T. Grant Co.*, 345 U.S. 629, 633, 73 S.Ct. 894, 898, 97 L.Ed. 1303 (1953)). To satisfy this element, our courts require that the moving party "make a 'clear showing of immediate irreparable injury' or a 'presently existing actual threat . . . .'" D.I. 13 at 9 (internal citations omitted). "[A]n injunction will not issue merely to assuage the fears of the movant." *Johnson & Johnson Orthopaedics, Inc. v. Minnesota Min. & Mfg. Co.*, 715 F. Supp. 110, 112 (D. Del. 1989). Thus, the movant cannot allege a harm that is "speculative and prospective." *Id.*

Plaintiff contends that an injunction is necessary to prevent Defendant Bootysprout Ventures from "distribut[ing] or otherwise transfer[ing] the assets it received from [Defendant] Bootysprout, Inc. to other entities outside of this Court's jurisdiction, reach, or control." D.I. 5 at 11. According to Plaintiff, the risk of asset dissipation by Defendant Bootysprout Ventures is substantial and credible because Ballestero "recently caused Bootysprout, Inc. to be dissolved in Nevada, incorporated a new entity Bootysprout Ventures in Delaware with substantially the same ownership and control as Bootysprout, Inc., and transferred all Bootysprout, Inc.'s assets to Bootysprout Ventures." *Id.* at 5. Plaintiff contends that Ballestero caused Bootysprout, Inc. to transfer its assets "with the intent to hinder, delay, or otherwise defraud [Plaintiff]" of its ability to sue Bootysprout, Inc for the debts owed, and "[h]ad Bootysprout, Inc. not fraudulently transferred all of its assets to Bootysprout Ventures," Plaintiff argues that it "would have sued Bootysprout, Inc. and obtained the appropriate monetary damages as a judgment." *Id.*

Defendants, on the other hand, contend several allegations that form the basis of Plaintiff's Motion are "simply untrue." In particular, Defendants argue that, "[c]ontrary to [Plaintiff's] allegations, it knew on March 7, 2023 that BootySprout, Inc. transferred its intellectual property to BootySprout Ventures LLC and agreed that BootySprout Ventures LLC would not be responsible for the obligations of BootySprout, Inc." D.I. 13. This evidence,

according to Defendants, is irreconcilable with Plaintiff's claims that it learned of the transfer of assets from Bootysprout, Inc. to Bootysprout Ventures in April 2024 and similarly disproves that Defendants pursued the transfer to obstruct or frustrate Plaintiff's ability to collect on the debt owed by Bootysprout, Inc. D.I. 13 at 11-12.

Plaintiff disagrees and contends that "a closer look" at the evidence introduced by Defendants "shows that Defendant's 'evidence' *actually supports* [Plaintiff's] requested relief" by proving that assets were in fact transferred from Bootysprout, Inc. to Bootysprout Ventures. D.I. 15 at 2-3 (emphasis added). While the Court agrees that Defendants' evidence confirms that some assets were transferred from Bootysprout, Inc. to Bootysprout Ventures, the weight of the evidence introduced by Defendants shows that Plaintiff is not entitled to the sought injunctive relief. Indeed, in moving for a TRO, Plaintiff initially alleged that Bootysprout, Inc. transferred "all of its assets," including "all account receivables, all cash, and any other tangible and intangible assets of Bootysprout, Inc." D.I. 5 at 5. After Defendants responded with evidence undermining this claim, Plaintiff narrowed its allegations to instead allege that Ballestero transferred Bootysprout, Inc.'s "most important and valuable" intellectual property assets which, according to Plaintiff, left Bootysprout, Inc. "significantly diminished." D.I. 15 at 3. While Plaintiff may believe that even the transfer of Bootysprout, Inc.'s "most valuable assets" supports its claims for fraudulent transfer,[2] the fact that Bootysprout, Inc. retained some of its assets after the transfer refutes many of the allegations forming the basis of Plaintiff's argument of irreparable harm. For instance, this evidence contradicts Plaintiff's claim that Ballestero

---

[2] *See* D.I. 15 at 3 ("[T]he fact that Bootysprout, Inc. assigned this value to a third-party entity before dissolving completely undercuts this argument. Furthermore, a review of the contracts and other documents cited within Corrigan's affidavit establish that all of the transactions at issue resulted from self-dealing transferring assets and contracts from one corporation to another all under Michael Ballestero's control.").

7

caused the transfer so that he could "operat[e] Bootysprout Ventures as a continuation of Bootysprout, Inc., but just under a slightly different name." D.I. 5 at 6.

      Moreover, even if the Court assumes, as Plaintiff now contends, that the transfer left Bootysprout, Inc. "a significantly diminished entity," Defendants' evidence casts substantial doubt on Plaintiff's allegations that the transfer of assets was undertaken with the intent to frustrate or hinder Plaintiff's ability to collect on its debt. *Id.* at 11. The Master Supplier Agreement, for example, reveals that Plaintiff learned of the transfer no later than March 2023 and, despite Plaintiff's claim that it "would have sued Bootysprout, Inc. and obtained the appropriate monetary damages as a judgment," Plaintiff did not seek intervention from this Court until June 2024, when it filed the present Motion. D.I. 4. Additionally, Ballestero's February 2023 email informed Plaintiff that Stay Peachy LLC would pay any outstanding bills owed by Bootysprout, Inc. Corrigan Decl. ¶ 5. Yet, Stay Peachy LLC is not a party to this litigation, and Plaintiff does not allege that it attempted to collect the debt from Stay Peachy LLC and was unable to do so. Plaintiff also makes no allegations alleging whether or why it could not seek repayment from Stay Peachy LLC. Finally, Defendants' evidence proves that Bootysprout, Inc. was dissolved on January 31, 2024. Corrigan Decl. ¶ 10. That this dissolution occurred nearly thirteen months after the asset transfer and ten months after Plaintiff learned of the transfer cannot be reconciled with Plaintiff's attempts to allege that Ballestero *recently* "dissolved Defendant Bootysprout, Inc. and transferred all of its assets to a successor entity, Defendant Bootysprout Ventures, LLC." D.I. 5 at 5. The discrepancy between the time of the asset transfer and the dissolution also undermines Plaintiff's claim that the transfer was undertaken for the purpose of "rendering Bootysprout, Inc. insolvent and unable to pay its debt." *Id.*

8

These inconsistencies are material to the Court's irreparable harm analysis because Plaintiff relies on the prior transfer from Bootysprout, Inc. to Bootysprout Ventures to support its claim that, "[a]t present, Bootysprout Ventures is in a similar position to immediately distribute or otherwise transfer the assets it received from Bootysprout, Inc. to other entities outside of this Court's jurisdiction, reach, or control." *Id.* at 11 (arguing that it is "the threat of rendering relief meaningless [that] creates the requisite irreparable harm that forms the basis for this Court to issue preliminary relief."). And while the Court recognizes that, absent an injunction, nothing would prevent Ballestero or Defendants from creating an entity outside of the Court's jurisdiction and transferring Bootysprout Ventures' assets to that entity, Plaintiff is not entitled to an injunction merely to safeguard its ability to recover a future judgement. *See Luan v. G4Free Sports*, C.A. No. 23-60848-AMC, D.I. 14 at 9 (S.D. Fla. Jul. 21, 2023) ("As in any civil case, there is always the risk that a prevailing party may be unable to monetarily recover on a judgment, but ordinarily, courts do not freeze defendants' assets whenever they are sued in order to make it easier for plaintiffs to collect on future judgments." (internal quotations and citations omitted)). Plaintiff must show that an irreparable injury is likely in the absence of an injunction.

Given the many discrepancies with Plaintiff's allegations regarding the Bootysprout, Inc.'s asset transfer to Bootysprout Ventures, however, the record does not support Plaintiff's claim that the transfer was done "with the intent to hinder, delay, or otherwise defraud [Plaintiff] from the amounts it is owed." *See* D.I. 5 at 5. And in light of Defendants' evidence that Plaintiff was informed of the transfer in March 2024 and was told that Stay Peachy LLC would assume Bootysprout, Inc.'s debt, Plaintiff cannot use the fact that a prior transfer between Bootysprout, Inc. and Bootysprout Ventures "actually occurred" to demonstrate that Plaintiff faces a real threat that Bootysprout Ventures will take fraudulent actions to render any relief against it

9

meaningless. *But see Mitsubishi Power Sys. Americas, Inc. v. Babcock & Brown Infrastructure Grp. US, LLC*, No. 4499-VCL, 2009 WL 1199588, at *4 (Del. Ch. Apr. 24, 2009) (finding irreparable injury where evidence showed "that [defendant] has engaged in fraudulent transfers to its affiliates and intends to do so again in the near future"). For the same reasons, Plaintiff's remaining allegations, including "the fact that Bootysprout Ventures and Bootysprout, Inc. maintain substantially the same ownership and control," also do not show that Plaintiff faces a real and imminent threat of irreparable injury. D.I. 15 at 4; *see also id.* ("[Plaintiff] has established that the Defendants have a history of avoiding payment obligations by transferring all of its assets to another entity and outside of a given court's jurisdiction or control"). That Plaintiff waited over a year to seek a TRO after learning of the transfer from Bootysprout, Inc. to Bootysprout Ventures provides at least some indication that even Plaintiff may not have viewed the threat of further dissipation as imminent or substantial.[3] *See Chestnut Hill Sound Inc. v. Apple Inc.*, C.A. No. 15-261-RGA, 2015 WL 6870037, at *4 (D. Del. Nov. 6, 2015) (finding that delay "is a factor that weighs against the issuance of a preliminary injunction, by demonstrating that there is no apparent urgency to the request for injunctive relief").

In sum, viewing the record before it, the Court finds that Plaintiff has not satisfied its burden of proving that a TRO is necessary to prevent imminent and actual harm. As irreparable harm is a gateway factor, the Court need not consider whether the likelihood of success, balance of equities, or public interest. Plaintiff's Motion for TRO is **DENIED**.

\*\*\*

---

[3] Indeed, if Plaintiff truly believed that further dissipation by Bootysprout Ventures was imminent, Plaintiff would have sought a TRO shortly after learning of the transfer in March 2023.

At Wilmington this 19th day of August 2024, IT IS HEREBY ORDERED that Plaintiff's Motion for Temporary Restraining Order (D.I. 4) is DENIED.

                                                  GREGORY B. WILLIAMS
                                        UNITED STATES DISTRICT JUDGE